*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KAREEM BAZZY, Personal Representative of the
ESTATE OF ABDEL M. BAZZY,

       Plaintiff-Appellant,

v

CITIZENS INSURANCE COMPANY OF
AMERICA,

       Defendant-Appellee.

FOR PUBLICATION
December 19, 2025
9:26 AM

No. 372729
Wayne Circuit Court
LC No. 23-000385-NF

Before: RIORDAN, P.J., and GARRETT and MARIANI, JJ.

RIORDAN, P.J.

Plaintiff Kareem Bazzy, as Personal Representative of the Estate of Abdel M. Bazzy, appeals as of right the trial court's January 29, 2024 order granting summary disposition in favor of defendant Citizens Insurance Company of America and denying plaintiff's motion for partial summary disposition to compel arbitration. On appeal, plaintiff argues that the trial court erred by refusing to compel arbitration and dismissing the case because Abdel and defendant had a contractual agreement to submit their no-fault dispute to arbitration, and enforcement of the agreement was not barred by the statute of limitations. Defendant disagrees, arguing that the statute of limitations and laches bar enforcement of the arbitration agreement, and the trial court correctly so concluded.

For the reasons set forth, we conclude that the question of whether the statute of limitations or laches bars enforcement of an arbitration agreement generally is a question for the arbitrator, not the trial court. Thus, while we express no opinion on the underlying merits of that question, we reverse the trial court and remand to that court for further proceedings.

## I. FACTS

In January 2023, plaintiff filed his complaint against defendant, thereby initiating Case No. 23-000385-NF, the instant case before us. According to the complaint and accompanying exhibits, on May 26, 2007, plaintiff's decedent, Abdel Bazzy, was struck by a motor vehicle in Dearborn and suffered injuries. Defendant was the responsible no-fault insurer. However, defendant

apparently paid only some of the no-fault benefits to which Abdel was entitled, and disputed the remainder of the claimed benefits. Abdel sued defendant, thereby initiating Case No. 08-114629-NF, and the two parties entered into an agreement for binding arbitration. That agreement provided, in relevant part:

> The arbitrators shall determine the following issues:
>
> a. The nature of and extent of accidental bodily injury sustained by the Plaintiff, Abdel M. Bazzy;
>
> b. Whether the accidental bodily injuries claimed by Abdel Bazzy arose out of the motor vehicle accident of May 26, 2007;
>
> c. Whether Abdel M. Bazzy is entitled to recovery of any benefits against Citizens pursuant to the No-Fault Act as a result of injuries which arose out of the motor vehicle accident of May 26, 2007;
>
> d. The amount of damages, if any, to which the Plaintiff is entitled.
>
> * * *
>
> The written decision of two arbitrators is binding. The award of the arbitrators will represent a full and final resolution as to any and all past and present no-fault PIP benefits up to the date of this arbitration, to which Abdel M. Bazzy has claimed or may claim as a result of the accident of May 26, 2007.
>
> * * *
>
> If either party refuses to abide by the award, judgment on the award may be entered in the Court having jurisdiction.[1]

Consistent with that agreement, on February 19, 2009, Abdel and defendant entered into a stipulated order for dismissal of Case No. 08-114629-NF, providing that the case "is dismissed without prejudice and without costs, attorney fees and/or interest to either party, due to the parties' agreement to place this litigation into binding arbitration . . . ."

Returning to the complaint in the matter before us, plaintiff alleged:

> ¶ 13. That following the execution of the agreement to arbitrate the parties engaged in discovery. The deposition of Plaintiff's decedent was taken and the two

---

[1] The arbitration agreement is signed by counsel for Abdel and defendant but not dated. However, a facsimile cover page accompanying the arbitration agreement indicates that it was faxed by defendant's counsel to Abdel's counsel on March 24, 2009. Thus, it is reasonable to assume that the arbitration agreement was signed by those two parties on or around that date. The parties on appeal do not dispute this proposition.

independent medical examinations were conducted at the request of the Defendant, Citizens Insurance Company of America.

* * *

¶ 15. On January 4, 2017, Abdel M. Bazzy, died due to causes unrelated to the injuries suffered in the motor vehicle accident. Subsequently, a decedent's Estate was opened in the Wayne County Probate Court . . . . The court appointed Kareem Bazzy as the Personal Representative of the Estate of Abdel M. Bazzy.

* * *

¶ 18. Defendant, Citizens Insurance Company of America has changed attorneys numerous times since the inception of this matter, and there have been numerous delays in moving this matter forward. Since the filing of this matter and the subsequent to the execution of the Agreement to Arbitrate, the Defendant, Citizens Insurance Company of America has been represented by the four different attorneys . . . .

* * *

¶ 21. On January 10, 2022 defense counsel, Andrew Biscoglia emailed Plaintiff decedent's counsel advising, in part, "*whatever contract that the alleged arbitration agreement may have created [sic] between Mr. Bazzy and Citizens can no longer be fulfilled by Mr. Bazzy*." . . . [Emphasis in original.]

Accordingly, plaintiff sought a court order determining that there is an enforceable arbitration agreement between plaintiff and defendant, and directing those two parties to proceed with arbitration.

In July 2023, defendant moved for summary disposition under MCR 2.116(C)(8) and (C)(10). In the motion and accompanying brief, defendant argued that the complaint for arbitration was barred by the six-year breach of contract statute of limitations, see MCL 600.5807(9), as the arbitration agreement was executed in 2009, and plaintiff did not initiate the instant action until 2023. Defendant similarly argued that the complaint was barred by the doctrine of laches. Defendant asserted that "Plaintiff's extreme and inexcusable delays in arbitrating this case [have] caused unfair prejudice to Defendant as Defendant will be forced to arbitrate a case that is sixteen years old wherein the original parties and witnesses are either deceased or no longer available to provide any information as the PIP claim."

Plaintiff responded that the statute-of-limitations issue was meritless because this Court has implicitly recognized that arbitration may require multiyear delays. Plaintiff filed a motion for partial summary disposition under MCR 2.116(C)(7) as well. In the accompanying brief, plaintiff argued that the only question before the trial court was whether the instant no-fault dispute was subject to the arbitration agreement. And, plaintiff explained, there is no reasonable dispute that the instant dispute is squarely within the terms of the arbitration agreement. Thus, according to plaintiff, "defenses/arguments that the statute of limitations has expired, laches, and the one year back rule are not for this court to decide but rather for the arbitrators at an arbitration hearing."

Plaintiff consequently requested that the trial court order the parties to arbitration but retain jurisdiction over the action to enforce the eventual arbitration judgment.[2]

At the hearing on the competing motions for summary disposition, the parties argued consistent with their respective briefs. At the conclusion of the hearing, the trial court ruled in favor of defendant, reasoning as follows:

> But at the end of the day, it just sounded to me that Plaintiff has essentially abandoned the claim for over a decade.
>
> And I know that discovery was complete in 2015. And although the Plaintiffs had attached -- they had -- they attached additional attempts to contact the Defendant's Counsel and those attempts were made in 2019, 2020. But Plaintiff still had several years to attempt to arbitrate before the Plaintiff died.
>
> So I mean, I'm looking at it that while there was an arbitration agreement between the parties, due to the inaction of the Plaintiff, that agreement isn't enforceable any more because at the end of the day, it wouldn't be subject to arbitration because we have a contract that contains the arbitration. And the six-year statute of limitations has expired on that contract itself. And so there's no action taken within the six-year statute of limitation period.
>
> So the period has run. . . .

The trial court entered its written order memorializing its decision on the record a couple of weeks later.

Plaintiff now appeals, arguing that the trial court erred because timeliness defenses to enforcement of an arbitration agreement are procedural questions to be determined by the arbitrator, not the court. Plaintiff alternatively argues that the trial court erred because its decision was based upon the expiration of the six-year statute of limitations, but the breach of contract did

---

[2] In the brief, plaintiff also summarily explained some of the background facts:

> During the period for the filing of claims against the estate, three of the children of Abdel Bazzy, Lena Bazzy, Ali Bazzy, and Kareem Bazzy, who had provided attendant care services to Abdel Bazzy following the accident, filed claims against the estate. Each claim was for $105,150.00. These claims were served on Citizens Insurance through its resident agent . . . .
>
> Citizens Insurance through its attorneys failed to respond to the claims. After making numerous attempts to move this matter forward, Plaintiff's counsel sent [a] letter dated December 23, 2021 to Citizens' Insurance [sic] current attorney, Andrew Biscoglia, seeking to schedule the arbitration of the matter. . . .

-4-

not occur until about 2022, when defendant indicated that it would not comply with the arbitration agreement.

Defendant responds that the trial court should be affirmed because the arbitration agreement was breached within a reasonable period of time after its execution in March 2009 due to the fact that the parties did not fulfill its arbitration terms, thereby rendering the instant action outside the six-year statute of limitations. Defendant further argues that the trial court should be affirmed on the alternate basis of laches, and that such timeliness defenses are questions for the court, not the arbitrator.

## II. STANDARD OF REVIEW

"Summary disposition is granted under MCR 2.116(C)(7) when dismissal of the action is appropriate because of 'an agreement to arbitrate or to litigate in a different forum.' " *Emerzian v N Bros Ford Inc*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365100), slip op at 2. "This Court reviews de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(7)." *Id*. "In reviewing a motion under MCR 2.116(C)(7), this Court accepts as true, and construes in plaintiff's favor, well-pleaded allegations in the pleadings, affidavits, depositions, admissions, and documentary evidence submitted by the parties to determine whether a genuine issue of material fact exists." *Id*. "This Court reviews the interpretation of a contract de novo, including whether a claim is within the scope of an arbitration provision." *Id*.

"This Court reviews de novo a circuit court's decision on a motion for summary disposition under MCR 2.116(C)(10)." *Charter Twp of Canton v 44650, Inc*, 346 Mich App 290, 308; 12 NW3d 56 (2023). "Summary disposition under MCR 2.116(C)(10) is proper if there is no genuine issue about any material fact and the moving party is entitled to judgment as a matter of law." *Id*. "In reviewing the circuit court's decision, this Court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Id*. (quotation marks and citation omitted). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. at 308-309 (quotation marks and citation omitted).

## III. DISCUSSION

"Arbitration is a matter of contract." *Altobelli v Hartmann*, 499 Mich 284, 295; 884 NW2d 537 (2016) (quotation marks and citation omitted). "A party cannot be required to arbitrate an issue which it has not agreed to submit to arbitration." *Lichon v Morse*, 507 Mich 424, 437; 968 NW2d 461 (2021) (cleaned up). "The existence of an arbitration agreement and the enforceability of its terms are judicial questions for the court, not the arbitrators." *Legacy Custom Builders, Inc v Rogers*, 345 Mich App 514, 523; 8 NW3d 207 (2023) (quotation marks and citation omitted). "Ascertaining the arbitrability of an issue requires a court to consider whether the parties' contract contains an arbitration provision, whether the disputed issue arguably comes within the arbitration clause, and whether the dispute is expressly exempted from arbitration by the contract." *Id*. at 524.

Previously, the Michigan Arbitration Act (MAA) was the relevant statute for arbitration agreements. See *Wold Architects & Engineers v Strat*, 474 Mich 223, 229-231; 713 NW2d 750

(2006). However, the MAA was repealed by 2012 PA 370. Currently, the Uniform Arbitration Act (UAA), MCL 691.1681 *et seq.*, effective July 1, 2013, "governs an agreement to arbitrate whenever made." MCL 691.1683(1).[3] MCL 691.1686(2) of the UAA provides that "[t]he court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate," while MCL 691.1686(3) provides that "[a]n arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable." But see *Legacy Custom Builders*, 345 Mich App at 523 (stating that "the enforceability of its terms are judicial questions for the court").[4] See also MCL 691.1687(2) of the UAA ("If the court finds that there is an *enforceable* agreement to arbitrate, it shall order the parties to arbitrate.") (emphasis added).

The issue before us is whether timeliness defenses such as the statute of limitations and laches should be decided by the court or by the arbitrator.

The District of Columbia Court of Appeals[5] has explained that there is a split of authority regarding whether such timeliness defenses to the arbitration agreement itself—as opposed to timeliness defenses to the underlying claim—should be decided by the court or the arbitrator:

> Plymouth Rock also argues that Menna's suit to enforce the arbitration contract—i.e., to compel arbitration (or obtain damages)—is barred by Menna's waiver of his right to arbitrate, by the three-year statute of limitations for breach of contract claims, or by laches. These procedural defenses are predicated on Menna's alleged failure to proceed with arbitration when he had the chance and his subsequent tardiness in asserting his rights after Plymouth Rock refused to arbitrate. Some courts have held that challenges to the enforceability of an arbitration

---

[3] Defendant argues that the UAA does not govern this case pursuant to MCL 691.1713 of the UAA, which provides that "[t]his act does not affect an action or proceeding commenced or right accrued before this act takes effect." Defendant reasons that the arbitration proceedings "commenced" shortly after the March 2009 arbitration agreement was executed because the parties "select[ed] the arbitrators who would sit on the panel and engag[ed] in the discovery contemplated by their March 24, 2009, arbitration agreement."

We express no opinion on whether the UAA governs this case or whether defendant is correct that MCL 691.1713 is implicated here. Rather, we cite the relevant provisions of the UAA for general background purposes. As explained *infra*, our conclusion is the same regardless of whether the UAA governs this case. Further, we note that the now-repealed MAA does not include any relevant provisions that would aid our analysis.

[4] In addition to the UAA, MCR 3.602 is the court rule concerning arbitration. MCR 3.602(A) provides that "[c]ourts shall have all powers described in MCL 691.1681 *et seq.*, or reasonably related thereto, for arbitrations governed by that statute. The remainder of this rule applies to all other forms of arbitration, in the absence of contradictory provisions in the arbitration agreement or limitations imposed by statute, including MCL 691.1683(2)." For the purposes of this case, MCR 3.602 does not include any relevant provisions that would aid our analysis.

[5] Not to be confused with the United States Court of Appeals for the District of Columbia Circuit.

agreement on such grounds are for the court to determine (unlike comparable timeliness and waiver challenges to the viability of the underlying claim, which are more clearly for the arbitrator to determine). However, we took a different view of the matter in [*Woodland Limited Partnership v Wulff*, 868 A2d 860 (DC, 2005)], holding that whether a party to an arbitration agreement had waived its right to compel arbitration (in that case, by litigating the dispute in court) was presumptively a question to be decided by the arbitrator, not the court. While our opinion did not address whether a statute of limitations or laches defense to enforcement of an arbitration agreement is also for the arbitrator to consider, we see no reason to treat those defenses differently from waiver. The [Revised Uniform Arbitration Act] reinforces that conclusion. As noted above, it provides that "[t]he court shall decide whether an agreement to arbitrate exists," but an arbitrator "shall decide whether a contract containing a valid agreement to arbitrate is enforceable." We construe this to mean that, while the court must decide challenges to the validity of an agreement to arbitrate, e.g., challenges on such grounds as fraud in the inducement, illegality, duress, unconscionability, mutual mistake and the like, procedural defenses to enforcement that do not go to the validity of the agreement (including waiver, the statute of limitations and laches) are for the arbitrator to decide unless the parties have agreed otherwise. [*Menna v Plymouth Rock Assurance Corp*, 987 A2d 458, 464-465 (DC, 2010) (footnotes and ellipses omitted).]

Michigan caselaw is divided as well. In *SCA Servs, Inc v Gen Mill Supply Co*, 129 Mich App 224; 341 NW2d 480 (1983), this Court expressed approval of an ALR citation providing that "although the decisions are not unanimous, it has been usually held that the court is the proper forum to determine the effect of a general lapse of time in requesting or demanding arbitration, or the effect of participating in an action at law prior to demanding arbitration." *Id*. at 230 (quotation marks and citation omitted). This Court added that "we are inclined to follow the majority position holding that the court is the proper forum to determine whether there has been a waiver of this sort. Since the trial court based its decision on a finding that the arbitrator was responsible for determining the issue of waiver, the order granting summary judgment is reversed." *Id*. See also *Buckley v Small*, 52 Mich App 454, 455-456; 217 NW2d 422 (1974) (remanding to the trial court for judgment in favor of the defendants because of the plaintiff's "failure to act diligently and in good faith" in requesting arbitration).

More recently, however, in *Iron Co v Sundberg, Carlson & Assoc, Inc*, 222 Mich App 120; 564 NW2d 78 (1997), this Court rejected the defendant's argument that "the trial court should have used its equitable powers over an arbitration proceeding" under MCL 600.5035 of the MAA to rule that the plaintiff's arbitration claims "were barred by the doctrine of laches." *Id*. at 126. This Court explained that "the timeliness of the bringing of an arbitration proceeding is a procedural issue to be determined by the arbitrators rather than the courts," so "the decision whether to apply the doctrine of laches was within the arbitrator's discretion, and the trial court correctly declined to interfere with the exercise of the arbitrator's discretion." *Id*. (cleaned up).

In *Amtower v William C Roney & Co (On Remand)*, 232 Mich App 226; 590 NW2d 580 (1998), the issue before this Court was "whether the Federal Arbitration Act [FAA], 9 USC § 1 *et seq*., requires that a court instead of arbitrators decide the issue of the timeliness of plaintiffs'

claims." *Id*. at 229 (quotation marks and citation omitted). This Court concluded that such issues should be decided by arbitrators, reasoning, in relevant part:

> In *John Wiley & Sons, Inc v Livingston*, 376 US 543, 557-558; 84 S Ct 909; 11 L Ed 2d 898 (1964), the Supreme Court held that "[o]nce it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." Since that decision, an overwhelming majority of federal appellate circuits (including the Sixth Circuit Court of Appeals) considering the issue have determined that timeliness of a claim is a procedural matter and, therefore, within the arbitrator's jurisdiction. Michigan, which has developed its own strong policy favoring arbitration on the basis of federal precedent, is in accord. Michigan law also provides that arbitrators, rather than courts, should decide the application of such potential defenses to arbitration as contractual limitation periods, statutes of limitation, and the doctrine of laches. See, e.g., *Brown v Holton Public Schools*, 397 Mich 71, 73-74; 243 NW2d 255 (1976); *Iron Co v Sundberg, Carlson & Associates, Inc*, 222 Mich App 120, 126; 564 NW2d 78 (1997); [*Bennett v Shearson Lehman-Am Express, Inc*, 168 Mich App 80, 83; 423 NW2d 911 (1987)]. [*Id*. at 232-233 (footnotes omitted).][6]

In *Am Federation of State, Co & Municipal Employees, Council 25, AFL-CIO v Hamtramck Housing Comm'n*, 290 Mich App 672; 804 NW2d 120 (2010), the issue before this Court was "the timing of the demand for arbitration" by the plaintiff's complaint for arbitration. *Id*. at 673 & 677 n 3. The trial court dismissed the complaint on the basis of laches, but this Court reversed, reasoning as follows:

> Procedural questions such as timeliness are generally left to the arbitrator. The duty to arbitrate grievances arises from the contractual agreement between an employer and its employees. Where an employer and a union have contractually agreed to arbitration, in the absence of explicit contractual direction to the contrary, all doubts regarding the proper forum should be resolved in favor of arbitration.
>
> * * *
>
> The language of the provision clearly requires arbitration of unresolved grievances that have been processed through the grievance procedure. Moreover, there is nothing in the provision that explicitly excludes the issue of timeliness from the arbitrator. In light of the presumption in favor of arbitrability, and the fact that nothing in the language provides positive assurance that the arbitration clause does

---

[6] In *Bennett*, this Court stated that "the timeliness of the bringing of an arbitration proceeding is a procedural issue to be determined by the arbitrators rather than the courts." *Bennett*, 168 Mich App at 83. In *Brown*, our Supreme Court noted that under federal law, "[p]rocedural questions should be left to the arbitrator," and "[t]imeliness has been considered a procedural matter." *Brown*, 397 Mich at 73.

not cover the question of timeliness, we are bound to conclude that it is the arbitrator, not the trial court, that must decide the issue.

\* \* \*

Because we conclude that the determinations regarding timeliness and the application of the defense of laches must be made by the arbitrator, we need not decide whether the trial court erred in its analysis of the issue. [*Id*. at 674-676 (cleaned up).]

To summarize the evolution of our Court's caselaw on the issue, in 1983 a panel concluded that timeliness defenses to a request for arbitration are for the court to decide. See *SCA Servs*, 129 Mich App at 230 (adopting the majority rule that "the court is the proper forum to determine the effect of a general lapse of time in requesting or demanding arbitration"). However, in 1987, we stated that "the timeliness of the bringing of an arbitration proceeding is a procedural issue to be determined by the arbitrators rather than the courts." *Bennett*, 168 Mich App at 83. Similarly, in 1997, this Court concluded that "the timeliness of the bringing of an arbitration proceeding is a procedural issue to be determined by the arbitrators rather than the courts[.]" *Iron Co*, 222 Mich App at 126. Moreover, in 1998, this Court stated that "Michigan law . . . provides that arbitrators, rather than courts, should decide the application of such potential defenses to arbitration as contractual limitation periods, statutes of limitation, and the doctrine of laches," *Amtower*, 232 Mich App at 233, although a careful reading of that decision might suggest that it is limited to timeliness defenses to the underlying claim, not the overall request for arbitration itself. Finally, in 2010, we reiterated that "[p]rocedural questions such as timeliness are generally left to the arbitrator," *Am Federation*, 290 Mich App at 674, although a careful reading of that decision must suggest that it was an application of federal labor law. When considering the comparative relevance of these cases, we bear in mind that they were decided under the now-repealed MAA, and that under MCR 7.215(J)(1), "[a] panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel . . . ."

With regard to the UAA, neither party has cited any controlling caselaw that would dictate the outcome of this case. However, it appears that the weight of authority suggests that under the UAA, timeliness defenses to a request for arbitration should be decided by the arbitrator, not the court. For example, the Oregon Court of Appeals explained that under the Oregon UAA, which provides that "[a]n arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled," see ORS 36.620(3), "the issue of waiver or estoppel is a 'condition precedent to arbitrability,' because it is 'procedural' in nature, rather than a 'substantive defense to arbitrability that grows out of the controversy itself.' " *Thornburgh Resort Co, LLC v Loyal Land, LLC*, 281 Or App 337, 341; 385 P3d 1116 (2016) (citation omitted). Similarly, when discussing the Federal Arbitration Act, upon which the Revised Uniform Arbitration Act was largely based, the United States Supreme Court explained that "whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the

arbitrators to decide." *Howsam v Dean Witter Reynolds, Inc*, 537 US 79, 85; 123 S Ct 588; 154 L Ed 2d 491 (2002) (cleaned up).[7]

Turning again to the matter before us, after considering these various binding and persuasive authorities, we conclude that the timeliness defenses to arbitration raised by defendant in this case—the statute of limitations and laches—are properly for the arbitrator, not the court, to decide. Assuming that the MAA governs this case, see footnote three, *supra*, *SCA Servs* is inconsistent with more recent MAA authority such as *Iron Co*, *Amtower*, and *Am Federation*. Under ordinary rules of judicial precedent, we would be compelled to follow *SCA Servs*, as it was the earlier-decided case. See Garner et al., *The Law of Judicial Precedent* (St Paul: Thomson/West, 2016), pp. 303-304. However, we need not do so under MCR 7.215(J)(1), as that case was decided before November 1, 1990. Here, we decline to follow *SCA Servs* because there are multiple subsequent cases reaching the opposite conclusion, and those cases are, in our view, more firmly grounded in persuasive precedent than *SCA Servs*. Thus, we decide to follow *Iron Co*, and to a lesser extent *Amtower* and *Am Federation*, not *SCA Servs*, assuming that the MAA governs this case.

Additionally, on the other hand, assuming that the UAA governs this case, foreign caselaw weighs in favor of interpreting MCL 691.1686(3), modeled on the RUAA adopted by the Uniform Law Commission, which provides that "[a]n arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable," as establishing that timeliness defenses are for the arbitrator. See *Howsam*, 537 US at 85; *Thornburgh Resort Co*, 281 Or App at 341. This is because, as those cases explain, timeliness defenses such as laches are a condition precedent to arbitrability for the purposes of the UAA. Or, stated otherwise, timeliness defenses are "issues of procedural arbitrability." See *Howsam*, 537 US at 85 (quotation marks and citation omitted).

In the absence of any controlling caselaw to the contrary, we will follow that foreign caselaw as persuasive. See *People v Campbell*, 289 Mich App 533, 535; 798 NW2d 514 (2010) ("[C]ases from foreign jurisdictions, which are not binding, can be persuasive."). Moreover, with regard to the particular arbitration agreement at issue, there is no language that would expressly exclude consideration of timeliness defenses from the arbitrator, and "there is a presumption of arbitrability unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Am Federation*, 290 Mich App at 674 (quotation marks and citation omitted). Thus, alternatively, we conclude assuming that the UAA governs this case, the timeliness defenses raised by defendant to arbitration should be

---

[7] We note that the rationale offered by *Howsam* and *Thornburgh Resort Co* differs from the rationale offered by the District of Columbia Court of Appeals in *Menna*, although all three courts reached the same ultimate conclusion.

As previously stated, MCL 691.1686(3) of the UAA provides that "[a]n arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable." *Howsam* and *Thornburgh Resort Co* stated that timeliness defenses constitute a condition precedent to arbitrability, while *Menna* stated that timeliness defenses constitute a question of whether an arbitration agreement is enforceable.

decided by the arbitrator, as those defenses are conditions precedent to arbitrability, i.e., issues of procedural arbitrability.

To summarize, we conclude that under both the MAA and the UAA, timeliness defenses to a request for arbitration, such as the statute of limitations and laches, are generally questions for the arbitrator, not the court, to decide.

## IV. CONCLUSION

We conclude that the question of whether timeliness defenses, such as the statute of limitations and laches, bars enforcement of an arbitration agreement generally is a question for the arbitrator, not the trial court. Therefore, we reverse the trial court's grant of summary disposition in favor of defendant and denial plaintiff's motion for partial summary disposition, and remand to that court for further proceedings consistent with our opinion. We do not retain jurisdiction.[8]

/s/ Michael J. Riordan
/s/ Kristina Robinson Garrett
/s/ Philip P. Mariani

---

[8] We acknowledge that caselaw and statutory authority on the issue before us is quite muddled. As explained, caselaw from this Court is divided. Moreover, the UAA itself arguably is inconsistent, as MCL 691.1686(3) provides that "[a]n arbitrator shall decide . . . whether a contract containing a valid agreement to arbitrate is enforceable," while MCL 691.1687(2) provides that, when a trial court is considering a motion to compel arbitration, "[i]f the court finds that there is an enforceable agreement to arbitrate, it shall order the parties to arbitrate." Thus, the question of enforceability seems to be vested with the arbitrator under MCL 691.1686(3) but, at least in certain cases, the court under MCL 691.1687(2). Indeed, this Court has repeatedly indicated that the enforceability of an arbitration agreement's terms is a judicial question for the court, see, e.g., *Legacy Custom Builders*, 345 Mich App at 523, although such statements may be inconsistent with MCL 691.1686(3). Further, this Court has, somewhat recently, indicated that waiver—if not statute of limitations or laches—of an arbitration agreement is a judicial question for the court. See, e.g., *Madison Dist Pub Sch v Myers*, 247 Mich App 583, 596-597; 637 NW2d 526 (2001). Moreover, although we have decided to follow what appears to be the majority rule concerning arbitration, that rule is not unanimous. See, e.g., *Matter of Smith Barney, Harris Upham & Co v Luckie*, 85 NY2d 193, 202; 647 NE2d 1308; 623 NYS2d 800 (1995) (recognizing "New York's rule that threshold Statute of Limitations questions are for the courts, not the arbitrator").

Accordingly, to the extent that we have erred in this opinion, we respectfully urge our Supreme Court to clarify the matter.